AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
2635 S 362nd Place, Federal Way, Washington 98003, more fully described in Attachments A

Case No. MJ20-209

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

2635 S 362nd Place, Federal Way, Washington 98003, more fully described in Attachments A, incorporated herein by reference.

located in the ___Western___ District of ___Washington___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Controlled Substances with Intent to Distribute, and Distribution |
| 21 U.S.C. § 846 | Conspiracy |

The application is based on these facts:

✓ See Affidavit of Special Agent Christopher Garlinghouse, continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Christopher Garlinghouse, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
⦿ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: 04/24/2020

*Judge's signature*

City and state: Seattle, Washington

Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

USAO: 2020R00363

# ATTACHMENT A

## Property to Be Searched

The property to be searched is located at 2635 S 362nd Place, Federal Way, Washington 98003 (the "SUBJECT RESIDENCE").  The SUBJECT RESIDENCE is a two story single-family residence with tan siding and white trim windows, and a dark shingle roof.  The residence is located on a 5,832 square foot lot, and has a six foot wooden privacy fence with a side access gate.  The SUBJECT RESIDENCE is as pictured below:



This warrant authorizes the search of all parts of the property upon which the SUBJECT RESIDENCE sits and/or is affiliated with, including any structures/fixtures, whether locked or not, where the items described in Attachment B (list of items to be seized) could be found.

Attachments A & B - 1
USAO #2020R00363

## ATTACHMENT B

### Items to be Searched For and Seized

This warrant authorizes the government to search the SUBJECT RESIDENCE for the following items:

Evidence and/or fruits of the commission of the following crimes: *Distribution of, and Possession with Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. § 841(a)(1); and *Conspiracy to Distribute, and to Possess with the Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1), and *Possession of a Firearm in Furtherance of Drug Trafficking*, in violation of Title 18, United States Code, Section 924(c):

1. Controlled Substances: Including but not limited to fentanyl, cocaine, heroin and methamphetamine.

2. Drug Paraphernalia: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3. Pill press or encapsulating machine and its associated equipment and molds for pill production.

4. Drug Transaction Records: Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances.

5. Customer and Supplier Information: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

6. Cash and Financial Records: Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashiers checks, and similar items, and money counters.

      7.      Weapons: Including but not limited to firearms, magazines, ammunition, and body armor.

      8.      Codes: Evidence of codes used in the distribution of controlled substances, including but not limited to passwords, code books, cypher or decryption keys, and similar information.

      9.      Property Records: Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented.

      10.      Indicia of occupancy, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents.

      11.      Evidence of Storage Unit Rental or Access: rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units.

      12.      Evidence of Personal Property Ownership: Registration information, ownership documents, or other evidence of ownership of property including, but not limited to vehicles, vessels, boats, airplanes, jet skis, all terrain vehicles, RVs, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth,

      13.      All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

      14.      All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash,  These documents are to include applications, payment records, money orders, frequent customer cards, etc.

      15.      Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments.

Attachments A & B - 3
USAO #2020R00363

16. Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

17. Correspondence, papers, records, and any other items showing employment or lack of employment.

18. Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

19. Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

20. Cellular telephones and other communications devices including Blackberries may be searched for the following items:
    a. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);
    b. Stored list of recent received, sent, and missed calls;
    c. Stored contact information;
    d. Stored photographs of narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;
    e. Stored text messages, stored emails and internet browsing history and information including stored communications over the internet.

# AFFIDAVIT OF CHRISTOPHER GARLINGHOUSE

STATE OF WASHINGTON  )
                     )  ss
COUNTY OF KING       )

I, Christopher Garlinghouse, a Special Agent with the United States Naval Criminal Investigative Service, having been duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent for the United States Naval Criminal Investigative Service ("NCIS"), assigned to the Special Operations Squad, which is attached to the Kitsap County Sheriff's Office West Sound Narcotics Enforcement Team ("WestNET"), a regional narcotics unit with multiple local and federal entities. I have been a Special Agent with NCIS since February, 2018. Prior to becoming a Special Agent with NCIS, I was a Deputy Sheriff and employed by the Orange County Sheriff's Office from 2006 to 2018.

2. As part of my duties as a Special Agent with NCIS, I investigate controlled substance offenses, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 846 (conspiracy to do the same). As set forth below, my training and experience includes the identification and interdiction of controlled substances. During my career as a law enforcement officer, I have been involved in many investigations into controlled substances offenses and drug trafficking organizations, including the execution of search warrants, interviews and interrogations of suspected drug traffickers, arrests of drug traffickers, and the identification and seizure of controlled substances and proceeds of drug trafficking. I am also familiar with the ways that drug traffickers package controlled substances and conceal their illicit activity from detection by law enforcement.

3. I have completed Criminal Investigator Training Program and Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed the Florida Department of Law Enforcement

Affidavit of Special Agent Garlinghouse - 1
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Basic Training, which includes 720 hours of training, and New Jersey State Tactical Undercover Agent training program. I have received specialized training in the investigation of controlled substances and on the identification and interdiction of controlled substances.

4. I make this affidavit from personal knowledge based on my participation in this investigation, including witness interviews by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of obtaining a search warrant and does not contain all details or all facts of which I am aware relating to this investigation.

5. In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect specific words or language used.

## PURPOSE OF AFFIDAVIT

6. I make this affidavit in support of an application for a warrant authorizing the search of the following residence, which is further described below and in Attachment A (attached hereto and incorporated by reference as if fully set forth herein), for evidence, fruits and instrumentalities, as further described in Attachments B (attached hereto and incorporated by reference as if fully set forth herein), of the crimes of *Distribution of, and Possession with Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. § 841(a)(1); and *Conspiracy to Distribute, and to Possess with the Intent to Distribute, Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1), and *Possession of a Firearm in Furtherance of Drug Trafficking*, in violation of Title 18, United States Code, Section 924(c), as described herein:

  a. **2635 S 362nd Place, Federal Way, Washington 98003** (hereinafter, the "SUBJECT RESIDENCE"), described in more detail in

Affidavit of Special Agent Garlinghouse - 2
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Attachment A to that warrant, which is incorporated herein. 2635 S 362nd Place, Federal Way, Washington 98003 is a two story single-family residence with tan siding and white trim windows, and a dark shingle roof. The residence is located on a 5,832 square foot lot, and has a six foot wooden privacy fence with a side access gate. As set forth below, investigators believe that RAOUL VINCENT NORMANDIA, JR. resides at the SUBJECT RESIDENCE

7. For the SUBJECT RESIDENCE, authority to search extends to all parts of the property, including main structure, garage(s), storage structures, outbuildings, and curtilage, and all vehicles, containers, compartments, or safes located on the property, whether locked or not where the items described in Attachment B (list of items to be seized) could be found.

8. Since this Affidavit is intended to show only that there is a sufficient factual basis for a fair determination of probable cause to support the Application, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for a search warrant for the SUBJECT RESIDENCE.

9. In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

## STATEMENT OF PROBABLE CAUSE

10. This investigation arises out of an incident on April 18, 2020, in which a sailor with the United States Navy was found unresponsive in his workspace on a Navy ship. The victim was pronounced deceased at the scene by first responders with Naval Base Kitsap Emergency Medical Services. In the pocket of the victim's uniform in the workspace, investigators with NCIS found two blue pills believed to be counterfeit 30 milligram Percocet pills ("Perc 30s") laced with fentanyl.

11. Based on my training and experience, and information relayed to me by other law enforcement personnel, I know that fentanyl is a Schedule II narcotic and a

Affidavit of Special Agent Garlinghouse - 3
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   highly dangerous drug. Fentanyl is a synthetic opioid that is 50 times more toxic than
2   heroin. In its purest form, fentanyl is a white powder or is found in grains similar in size
3   to table salt. For most people, two to three milligrams of fentanyl is capable of inducing
4   respiratory depression, arrest, and possibly death. Two to three milligrams of fentanyl is
5   comparable in size to five to seven individual grains of table salt. Additionally,
6   counterfeit Percocet pills have been associated with multiple overdose deaths in Western
7   Washington.

8       12.     Further investigation found that the victim had received Perc 30s from
9   another sailor on the same ship, who had purchased the pills from a dealer in Seattle, later
10  identified as a cooperating defendant ("CD").[1] Moreover, these pills had been provided
11  to a number of Navy sailors on the same ship, with two other sailors becoming violently
12  ill and one sailor requiring hospitalization and Narcan to treat an opioid overdose. As
13  discussed below, investigators have determined that NORMANDIA supplied Perc 30s to
14  CD, including the pills that investigators believe caused the sailors' illnesses, overdoses,
15  and death.

16  **A.     Investigators Conduct an Initial Investigation Into the Victim's Death**

17      13.     During the pendency of the above mentioned investigation into the
18  circumstances surrounding the death of the victim, Special Agents received a tip from a
19  Navy sailor on April 20, 2020. The tip concerned another sailor, Ivan Alexander
20  Armenta, who had allegedly traveled to Seattle on April 17, 2020, to procure Percocet
21  pills, and had then provided those pills to sailors on the ship, including the victim.

22      14.     Armenta was interviewed regarding his knowledge of, and involvement in,
23  the victim's death. Prior to questioning, Armenta was informed of his *Miranda* rights,
24  which he waived and agreed to speak with investigators. Armenta told investigators that

---

[1] CD has been charged by Complaint for *Possession of Controlled Substances with Intent to Distribute*, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). CD is cooperating for judicial consideration in their sentencing and, according to NCIC, CD has no other criminal history other than the charges CD is currently facing.

Affidavit of Special Agent Garlinghouse - 4
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

he had been in contact with an individual in Seattle, later identified as CD, since early March, 2020, via the Snapchat messaging application. Armenta stated that he had purchased 15 Perc 30s from CD's residence on April 17, 2020, the day before the victim's death. Armenta described the pills as small, light blue in color, and imprinted with an M on one side and the number 30 on the other. Based upon my training and experience, I know pills with the above description commonly contain fentanyl. Armenta confirmed that he had distributed the Perc 30s to other sailors on the ship, including the victim. Ultimately, Armenta consented to investigators accessing his cellular phone to contact the individual from whom he had purchased the pills.

**B.      Blue Pills Suspected to Contain Fentanyl Are Recovered From CD**

15.     With Armenta's consent, agents established communications with CD via Armenta's Snapchat account and arranged an undercover operation to purchase 100 Perc 30s from CD on the evening of April 20, 2020. At approximately 6:47 p.m. on April 20, agents messaged CD via Armenta's Snapchat account, posing as Armenta and asking if CD was free and if they could "pick up tonight." CD replied at 7:00 p.m., less than 15 minutes later, to say that he could probably meet later that evening, around 10:00 p.m. Still posing as Armenta via Snapchat, agents placed an order for 100 Perc 30s in exchange for $1,200. They then introduced the undercover agent as the person who would pick up the pills from CD.

16.     At approximately 10:52 p.m., the undercover agent used an undercover Snapchat account to contact CD, posing as Armenta's friend who would pick up the Perc 30s. In a Snapchat conversation that followed, CD requested more time to complete the deal, and noted that he was 3 pills short. Shortly before midnight, CD requested that the UC meet him at CD's apartment to complete the deal. When the UC arrived at the apartment complex at approximately 12:20 a.m., he asked CD to meet him in the parking lot, rather than in CD's apartment. At that point, CD called off the deal.

17.     After CD called off the deal, investigators obtained a telephonic search warrant in Kitsap County Superior Court for CD's apartment, which they executed at

Affidavit of Special Agent Garlinghouse - 5
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

approximately 12:30 a.m. During that search, investigators found and seized a plastic bag containing approximately 100 blue pills, suspected to be counterfeit Perc 30s containing fentanyl;[2] 100 grams of suspected cocaine; a black semiautomatic handgun; and over $10,000 in cash. CD was arrested, and agents seized CD's cellular phone.

**C.     Investigators Identify NORMANDIA as the Source of the Blue Pills**

18.    Agents have interviewed CD regarding drug trafficking activity, both CD's own and that of NORMANDIA. CD provided investigators with information about NORMANDIA, who supplied CD with the Perc 30s that were provided to the sailors and those that were found during the search of CD's apartment. CD has a long-standing acquaintance with NORMANDIA and is familiar with the SUBJECT RESIDENCE, which is listed as NORMANDIA's residence in Washington State Department of Licensing ("DOL") records. NORMANDIA also has two cars registered in his name at the SUBJECT RESIDENCE and, according to Washington State public business records, he runs a kenneling and dog breeding business out of the SUBJECT RESIDENCE. CD generally contacts NORMANDIA via Snapchat messaging or by calling or sending text messages to the number (206) 529-7545. Public records show that this phone number is, in fact, associated with NORMANDIA and the SUBJECT RESIDENCE. According to CD, they also contacted NORMANDIA on a second phone number, (253) 632-2006.

19.    According to CD, they regularly meet with NORMANDIA at the SUBJECT RESIDENCE, where NORMANDIA has provided CD with cocaine and counterfeit Perc 30s containing fentanyl in exchange for cash. According to CD, NORMANDIA lives alone in the SUBJECT RESIDENCE, and public records databases do not show any additional individuals living at the SUBJECT RESIDENCE. In the past, CD has seen kilos of cocaine, counterfeit blue pills consistent with Perc 30s, and large

---

[2] Investigators have not been able to field test the substances and pills recovered during the search, or open the plastic bag to count the pills, due to safety concerns over the presence of fentanyl.

Affidavit of Special Agent Garlinghouse - 6
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

sums of cash in the SUBJECT RESIDENCE, along with a number of firearms, including handguns and assault rifles.

20. In an interview with investigators, CD indicated that CD obtained 100 counterfeit Perc 30s containing suspected fentanyl from NORMANDIA on April 10, 2020, in exchange for $850 in cash. After purchasing the pills, CD told investigators that CD became concerned about their quality because they were too thin and did not "look right," so CD attempted to return the pills to NORMANDIA. According to CD, NORMANDIA insisted that CD keep the pills and offered to refund the $850. These communications are consistent with call logs and text messages found on CD's cellular phone, which include a record showing that CD received an $850 deposit to his Cash App account from user "shadowline kennels" on April 11, 2020. According to Washington State public business records, Shadowline Kennels is an LLC registered to NORMANDIA at the SUBJECT RESIDENCE. Shortly after CD received the $850 deposit, CD contacted NORMANDIA on the (253) 632-2006 number via text message to ask about the money. NORMANDIA replied to CD to "just withdraw it," and "see if you can move those for me because I already gave dude the money." Based upon my training and experience, the timing of these texts, and the statements of CD, I believe that NORMANDIA was telling CD to distribute the pills to others because NORMANDIA had already paid his own supplier for them.

21. CD further told investigators that he purchased an ounce of cocaine from NORMANDIA at the SUBJECT RESIDENCE on April 18, 2020, and indicated that NORMANDIA generally has four to eight ounces of cocaine at the SUBJECT RESIDENCE at a time.

22. CD also indicated that CD obtained 97 Perc 30s from NORMANDIA on April 20, 2020, which are the pills that investigators later found during their search of CD's apartment. According to CD, he contacted NORMANDIA shortly after CD agreed to provide Armenta (in reality, agents) with 100 counterfeit Perc 30s. CD stated that CD delayed the timing of the deal to, in part, go to the SUBJECT RESIDENCE to drink

Affidavit of Special Agent Garlinghouse - 7
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"lean" (cough syrup) and pick up the Perc 30s. CD told investigators that, when CD arrived at the SUBJECT RESIDENCE, NORMANDIA told CD to meet him at a neighbor's home, where NORMANDIA had taken the pills. CD met with NORMANDIA at the neighbor's home and retrieved the pills, which CD planned to sell to the undercover agent that night. This account is consistent with call logs and text messages found on CD's cellular phone, which includes a call from CD to the (206) 529-7545 number at 7:13 p.m., a few minutes after CD agreed to provide agents with 100 Perc 30s in exchange for $1,200. Seven minutes later, at 7:20 p.m., CD called NORMANDIA again, followed quickly by a text message to NORMANDIA stating "need that." Call logs further show that CD and NORMANDIA communicated by phone on multiple occasions throughout the evening.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

23. Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

 a. Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value. These items are generally kept in locations where drug traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes, vehicles and storage lockers.

 b. Traffickers of controlled substances commonly maintain addresses, vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization and it is common to find drug traffickers keeping records of said associates in cellular telephones and other electronic devices. Traffickers almost always maintain cellular telephones for ready access to their clientele and to maintain their ongoing narcotics business.

 c. Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences vehicles, and storage lockers. This evidence often includes more than contraband and paraphernalia and includes financial records, records of property and

Affidavit of Special Agent Garlinghouse - 8
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

vehicle ownership, records of property rented, records of post office boxes used to ship and receive contraband and currency, records of other storage facilities used to hide drugs or currency, and other documentary evidence relating to commission of, and proceeds from, their crimes.

d. During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings which show ownership, dominion, and control of vehicles, residences, and/or storage units.

e. Persons trafficking and using controlled substances commonly sell or use more than one type of controlled substance at any one time.

f. Traffickers frequently maintain items necessary for weighing, packaging, and cutting drugs for distribution. This paraphernalia often includes, but is not limited to, scales, plastic bags, pill presses and cutting/diluting agents and items to mask the odor of drugs.

g. Traffickers often maintain weapons, including guns and ammunition, in secure locations such as their residences and storage lockers, in order to protect their drugs and drug proceeds.

h. Traffickers often have false identification documents and identification documents in the names of others.

i. Drug trafficking is a cash business, and in order to escape notice from authorities for using unexplained income, or hide excessive cash from illegal activities, traffickers either keep large quantities of cash at home or other secure locations such as a vehicles and storage locker, or convert the cash into other valuable assets, such as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth. Records of such conversions are often stored where a trafficker lives.

j. A pill press or encapsulating machine, and its associated equipment, are used to convert powder drugs to pill form.

24. Drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require.

Affidavit of Special Agent Garlinghouse - 9
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

    a.    The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

    b.    The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors, and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

    c.    Stored text messages, to include alternative communication apps (ex. WhatsApp, Signal, Wickr, etc) are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user

Affidavit of Special Agent Garlinghouse - 10
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

who likely have helpful information about the user, his location, and his activities.

d.  Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs.

e.  Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

## **REQUEST FOR SEALING**

25. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of the Application for a Search Warrant, including the applications, affidavit and search warrant. I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation and disclosure of the search warrant, this affidavit, and/or these applications and the attachments thereto will jeopardize the progress of the investigation. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## **CONCLUSION**

26. Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of the crimes of Distribution of, and Possession with Intent to Distribute, Controlled Substances, in violation of 21 U.S.C. § 841(a)(1); and Conspiracy to Distribute, and to Possess with the Intent to Distribute, Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), and Possession of a Firearm in Furtherance of Drug Trafficking, in violation of Title 18, United States Code, Section 924(c), are located at the SUBJECT RESIDENCE, as more fully described in Attachment A. I therefore request

Affidavit of Special Agent Garlinghouse - 11
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that the court issue a warrant authorizing a search of the SUBJECT RESIDENCE for the items more fully described in Attachment B to the warrant, incorporated herein by reference, and the seizure of any such items found therein.

CHRISTOPHER GARLINGHOUSE, Affiant
Special Agent, NCIS

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on this 24th day of April, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

Affidavit of Special Agent Garlinghouse - 12
USAO# 2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970